**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE JPMORGAN CHASE & CO. DERIVATIVE LITIGATION | Master Case No. 1:23-cv-03903-JSR<br><br>DERIVATIVE ACTION |

**DEFENDANT JAMES E. STALEY'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ......................................................................................................................2

    A.    Parties ........................................................................................................2

    B.    The Alleged Wrongdoing ........................................................................3

    C.    Procedural History ..................................................................................4

ARGUMENT ..........................................................................................................................6

    I.    Plaintiffs Have Failed To Show That Demand on the Board Is Excused ...............6

        A.    Plaintiffs Cannot Show Demand Futility as to Mr. Staley Because the Bank Has Already Sued Him on the Same Allegations ........................8

        B.    Plaintiffs' Allegations That the Board Could Not Impartially Consider a Litigation Demand Fall Short ....................................................8

    II.    The Claims Against Mr. Staley Specifically Are Defective ................................15

        A.    Plaintiffs Fail To State a Claim Against Mr. Staley ..................................15

        B.    The Claims Against Mr. Staley Are Time-Barred ....................................18

    III.    Under the Doctrine of Claim Splitting, This Suit Cannot Proceed Against Mr. Staley ..................................................................................20

CONCLUSION......................................................................................................................22

## **TABLE OF AUTHORITIES**

### **CASES**

*In re Am. Int'l Grp., Inc. Derivative Litig.*, 415 F. App'x 285 (2d Cir. 2011) .........................8, 14

*Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002) .......................................20

*Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del. 2006) (en banc) ...............10

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984)................................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................15

*Barclay v. Lowe*, 131 F. App'x 778 (2d Cir. 2005) (unpublished) ...............................................21

*Beam v. Stewart*, 833 A.2d 961 (Del. Ch. 2003) ..........................................................................9

*Brewer v. Breen*, 2018 WL 565267 (S.D.N.Y. Jan. 23, 2018) ......................................................7

*Busher v. Barry*, 2021 WL 5071871 (2d Cir. Nov. 2, 2021) ........................................................19

*In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996) ...............10, 11, 12, 16

*Cent. Laborers' Pension Fund v. Dimon*, 2014 WL 3639185 (S.D.N.Y. July 23, 2014)...............6

*Chapin v. Benwood Found., Inc.*, 402 A.2d 1205 (Del. Ch. 1979)................................................16

*Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403 (N.D.N.Y. 2005)...........................................21

*Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777 (2012) .........................................................20

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000).................................................................20

*In re Delta & Pine Land Co. S'holders Litig.*, 2000 WL 875421 (Del. Ch. June 21, 2000)...........8

*DiRienzo v. Lichtenstein*, 2013 WL 5503034 (Del. Ch. Sept. 30, 2013).......................................13

*In re Dow Chem. Co. Derivative Litig.*, 2010 WL 66769 (Del. Ch. Jan. 11, 2010) .....................13

*Ellul v. Congregation of Christian Bros.*, 774 F.3d 791 (2d Cir. 2014) .......................................18

*Flannery v. Genomic Health, Inc.*, 2021 WL 3615540 (Del. Ch. Aug. 16, 2021) ........................14

*Franchi v. Firestone*, 2021 WL 5991886 (Del. Ch. May 10, 2021)..............................................13

*In re Gen. Motors Co. Derivative Litig.*, 2015 WL 3958724 (Del. Ch. June 26, 2015)...............11

*Hilton Head Holdings b.v. v. Peck*, 2012 WL 613729 (S.D.N.Y. Feb. 23, 2012).................18, 19

*Horman v. Abney*, 2017 WL 242571 (Del. Ch. Jan. 19, 2017)......................................................12

*Hughes v. Xiaoming Hu*, 2020 WL 1987029 (Del. Ch. Apr. 27, 2020)...........................................17

*Rojas ex rel. J.C. Penney Co., v. Ellison*, 2019 WL 3408812 (Del. Ch. July 29, 2019) ..............11

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991).................................................................7

*Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247 (S.D.N.Y. 2008)............................................18

*Lambrecht v. O'Neal*, 504 F. App'x 23 (2d Cir. 2012) ...........................................................9, 10

*In re LendingClub Corp. Derivative Litig.*, 2019 WL 5678578 .................................................11

*In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343 (Del. Ch. 2023) ............11, 16

*MCG Cap. Corp. v. Maginn*, 2010 WL 1782271 (Del. Ch. May 5, 2010)....................................14

*In re MetLife Inc. Derivative Litig.*, 2020 WL 4746635 (Del. Ch. Aug. 17, 2020)......................15

*Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010) (en banc)............................................................18

*Okla. Firefighters Pension & Ret. Sys. v. Corbat*,
2017 WL 6452240 (Del. Ch. Dec. 18, 2017)................................................................................12

*Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*,
2023 WL 3093500 (Del. Ch. Apr. 26, 2023)................................................................................16

*Patel v. Duncan*, 2021 WL 4482157 (Del. Ch. Sept. 30, 2021) .....................................................9

*Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491 (S.D.N.Y. 2012) ..........16

*In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010).....................18

*Melbourne Mun. Firefighters' Pension Tr. Fund ex rel. Qualcomm, Inc. v. Jacobs*,
2016 WL 4076369 (Del. Ch. Aug. 1, 2016) ................................................................................10

*Reiter v. Fairbank*, 2016 WL 6081823 (Del. Ch. Oct. 18, 2016)................................................15

*Ret. Sys. v. Carlson*, 2010 WL 2376890 (Del. Ch. June 7, 2010).................................................17

*Richardson, as Tr. of Richardson Living Tr. v. Clark*,
2020 WL 7861335 (Del. Ch. Dec. 31, 2020)..................................................................................8

*In re SAIC Inc. Derivative Litig.*, 948 F. Supp. 2d 366 (S.D.N.Y. 2013)......................................7

*Huck ex rel. Sea Air Shuttle Corp. v. Dawson*, 106 F.3d 45 (3d Cir. 1997)................................21

*Steinberg v. Dimon*, 2014 WL 3512848 (S.D.N.Y. July 16, 2014) ..............................................18

*United Food & Com. Workers Union v. Zuckerberg,*
  262 A.3d 1034 (Del. 2021) (en banc) .........................................................7, 8, 9, 13

*Wood v. Baum*, 953 A.2d 136 (Del. 2008)............................................................7, 10

*Yucaipa Am. All. Fund II, L.P. v. Riggio*, 1 A.3d 310 (Del. Ch. 2010) .......................13

## STATUTES

8 Del. C. § 102(b)(7) ...............................................................................................10

8 Del. C. § 141 .......................................................................................................16

N.Y. CPLR § 213(7) ................................................................................................18

N.Y. CPLR § 213(8) ................................................................................................19

N.Y. CPLR § 214(3) ................................................................................................18

## RULES

Federal Rule of Civil Procedure 9(b) .....................................................................1, 19

Federal Rule of Civil Procedure 12(b)(6) ....................................................1, 15, 18, 19

Federal Rule of Civil Procedure 23.1 ...............................................................1, 7, 15

## OTHER AUTHORITIES

18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and
  Procedure § 4406 (3d ed.)......................................................................................20

Defendant James E. "Jes" Staley respectfully submits this Memorandum of Law in Support of his Motion To Dismiss the Verified Amended Consolidated Shareholder Derivative Complaint ("Complaint" or "Compl.") pursuant to Rules 9(b), 12(b)(6), and 23.1 of the Federal Rules of Civil Procedure.  Mr. Staley expressly adopts and incorporates by reference the arguments advanced in the Memorandum of Law in Support of Defendants' Motion To Dismiss the Complaint filed by JPMorgan Chase & Co. ("JPMorgan") and related Defendants on July 6, 2023.  *See* ECF No. 25.

## PRELIMINARY STATEMENT

Plaintiffs allege that the directors and officers of JPMorgan, the nation's largest bank, failed to implement any compliance systems to review the bank's relationship with Jeffrey Epstein—the bank's most controversial client—and ignored countless red flags concerning his financial activities, ultimately harming the company after Epstein's criminal proclivities were exposed.  One of the officers whom Plaintiffs have sued on this theory is Jes Staley, the former head of the bank's investment banking division, who left JPMorgan more than a decade ago.  Plaintiffs' claims against Mr. Staley fail at the threshold for multiple reasons.

Having declined to make a demand on the board before filing this derivative suit, Plaintiffs must show that JPMorgan's current board of directors could not be trusted to bring claims against its officers and directors.  Plaintiffs cannot make this showing as to Mr. Staley, given that the bank—under the leadership of the very same board—*already sued Mr. Staley* earlier this year, in this very Court, on the same factual allegations.  Moreover, the two claims against Mr. Staley (in Counts II and III) fail to state a claim because Plaintiffs fail to plead (i) any allegations that Mr. Staley actually owed the supervisory duties that they accuse him of breaching, or (ii) any basis to toll the statute of limitations for claims that accrued more a *decade* ago.  Finally, the doctrine of claim splitting bars any repetitive claims against Mr. Staley by JPMorgan, which this derivative suit clearly is.  The Court should dismiss the claims against Mr. Staley.

## BACKGROUND

### A.    Parties

Nominal Defendant JPMorgan Chase & Co. (as previously defined, "JPMorgan") is a Delaware corporation headquartered in New York, New York, that provides financial and investment services as the nation's largest banking institution.  Compl. ¶ 32.  Plaintiffs are two pension funds that currently hold JPMorgan common stock, and which purport to bring derivative claims on JPMorgan's behalf.  *Id.* ¶¶ 29-31.

There are two sets of individual defendants in this case, the "Director Defendants" and the "Officer Defendants."  JPMorgan's current CEO and Board Chairman James "Jamie" Dimon is sued in both capacities.

***Director Defendants****.*  Stephen B. Burke, Todd A. Combs, James S. Crown[1], Timothy P. Flynn, Mellody Hobson, John W. Kessler, Phebe N. Novakovic, and Dimon are current or former directors of JPMorgan's board.  *Id.* ¶¶ 33-39.  All except Kessler were members of the so-called "Demand Board," i.e., the twelve-member Board of Directors tasked with managing the bank's affairs at the time this lawsuit was filed in May 2023.  *Id.* ¶ 188.

***Officer Defendants****.*  Besides Dimon, the only other Officer Defendant is Jes Staley, a former executive who left the bank in 2013 after serving as head of the firm's Investment Bank since 2009.  *Id.* ¶ 42.  Mr. Staley previously occupied several roles within the bank's Asset Management division, where he interacted with financier Jeffrey Epstein, a client of the bank.  *Id.* ¶ 109.  Mr. Staley never served on the company's Board of Directors.  *Id.* ¶¶ 40, 42.

---

[1] Upon information and belief, Mr. Crown died on June 25, 2023, seven weeks after this suit was filed.  *See* Suggestion of Death, ECF No. 23.

B.      **The Alleged Wrongdoing**[2]

The allegations underlying this lawsuit are familiar to the Court.  *See* Op. and Order, *Jane Doe v. JPMorgan Chase Bank, N.A.*, 1:22-cv-10019-JSR, ECF No. 102; Op. and Order, *Gov't of the U.S. Virgin Islands v. JPMorgan Chase Bank, N.A.*, 1:22-cv-10904-JSR, ECF, No. 130.  As relevant here, the Plaintiff pension funds allege that Defendants facilitated a colossal breakdown in compliance and oversight requirements in JPMorgan's relationship with Jeffrey Epstein, resulting in harm to the bank.

According to the Complaint, even before the bank first onboarded Epstein as a client in 1998, he was a well-known and controversial figure, and thus a "high-risk, but high-reward, client." Compl. ¶ 62.  Such a client should have undergone robust due-diligence review, *id.* ¶¶ 63-64, in part due to his notoriety and in part because—as a global financial institution—JPMorgan was subject to numerous laws and regulations requiring certain internal controls to monitor client activity, *id.* ¶¶ 49-60.

The Complaint further alleges that, once onboarded as a client, Epstein should have received additional scrutiny from the bank, principally because of the well-publicized charges of sexual abuse that eventually led to his arrest, incarceration, and registration as a sex offender in 2008. *Id.* ¶¶ 113-33.  Although the bank terminated Epstein as a client in 2013, *id.* ¶ 158, Plaintiffs allege that, for several years before then, JPMorgan ignored certain "red-flag" evidence of Epstein's possible sex trafficking, including (i) his prodigious cash withdrawals, (ii) his frequent transporting of women on international flights via private jet, and (iii) his suspicious foreign

---

[2] Although he vigorously denies many of the allegations in this case, Mr. Staley treats as true the Complaint's factual allegations for purposes of this motion.

remittances.  *Id.* ¶¶ 145, 154, 159-69.  According to the Complaint, JPMorgan failed to follow through on investigating such activity and reporting it to the authorities.  *Id.* ¶¶ 154-62, 169.

As to Mr. Staley specifically, the Complaint alleges that, at the very outset of the relationship, the bank tasked Mr. Staley with "managing Epstein as a client," and that over time, the two developed a personal friendship.  *Id.* ¶¶ 109-10.  Other executives and departments of JPMorgan, however, were aware of and responsible for keeping tabs on Epstein's activities and the risks he posed to the bank.  *Id.* ¶¶ 5, 146-47, 149-55.

### C.    Procedural History

On November 24, 2022, "Jane Doe"—a purported victim of Epstein's trafficking—sued JPMorgan on putative class claims for negligence and violation of the Trafficking Victims Protection Act.  *See* Compl., *Jane Doe v. JPMorgan Chase Bank, N.A.*, 1:22-cv-10019-JSR, ECF No. 1.  The U.S. Virgin Islands similarly sued the bank a few weeks later.  Compl., *Gov't of the U.S. Virgin Islands v. JPMorgan Chase Bank, N.A.*, 1:22-cv-10904-JSR, ECF No. 1.  JPMorgan subsequently impleaded Mr. Staley into both cases, suing him for, *inter alia*, (i) breach of his fiduciary duties, and (ii) violation of the "faithless servant" doctrine, based on alleged misconduct in Mr. Staley's interaction with Epstein as a client.  *See* Third-Party Compls., ECF Nos. 59, 130.  The litigation between JPMorgan and Mr. Staley remains ongoing.

In May 2023—roughly six months after the above-mentioned *Jane Doe* lawsuit—the first pension fund Plaintiff filed this derivative action.  (Initial) Compl., ECF No. 1.  The second Plaintiff filed suit roughly six weeks later, and—following consolidation—the two funds jointly filed the operative Amended Complaint on June 30, 2023.  ECF No. 17.  The Amended Complaint asserts three causes of action: (i) breach of fiduciary duty against the Director Defendants (Count I), (ii) breach of fiduciary duty against the Officer Defendants (Count II), and unjust enrichment

against both Defendant groups (Count III).  Compl. ¶¶ 200-20.  As to all three Counts, the crux of the allegations is that Defendants—including Mr. Staley—breached their fiduciary duties to JPMorgan by "ignoring red flags related to Epstein's actions and failing to adhere to their own internal controls," or "knowingly disregarding their own internal controls," such that Epstein's activities continued uninterrupted, and the bank later suffered financial and reputational damages as a result of its commercial relationship with him.  *Id.* ¶¶ 211-13.  Plaintiffs acknowledge that these alleged failings occurred more than a decade ago, but suggest that the untimeliness of their lawsuits can be excused by "concerted and long-running efforts to conceal critical facts" by unnamed individuals at JPMorgan.  *Id.* ¶ 197.

Although Plaintiffs filed derivatively on behalf of Nominal Defendant JPMorgan, neither pension fund made a pre-suit demand on the Board, and instead they contend that demand should be excused as futile.  *Id.* ¶ 185.  In this regard, the Demand Board—i.e., the persons who would have received and considered a demand, had Plaintiffs made one—consisted of twelve members, seven of whom are Defendants: Burke, Combs, Crown, Dimon, Flynn, Hobson, and Novakovic; and five of whom are not: Linda B. Bammann, Alicia Boler Davis, Alex Gorsky, Michael A. Neal, and Virginia Rometty.  *Id.* ¶ 188.

Plaintiffs concede that three of the twelve Demand Board members—Davis, Gorsky, and Rometty—face no conflicts and are thus independent for purposes of assessing litigation demands. *Id.* ¶¶ 189-92.  For the remaining members, Plaintiffs predictably allege that all seven Defendant members of the Demand Board are biased due to their own potential liability on the claims at issue. *Id.* ¶ 189.  Plaintiffs state that Michael Neal faces "a substantial likelihood of liability" in this action or related actions, but he is not a defendant and there is no further explanation.  *Id.*

The Complaint also alleges a lack of independence, contending that non-defendant director Bammann is not independent from Dimon because she "owes a significant portion of her professional success" to him based on (i) her previous work roles under him at Bank One from 2001 to 2004 and at JPMorgan in 2005, and (ii) the fact that she joined JPMorgan's board when he was chairman. *Id.* ¶ 193. The Complaint similarly contends that Defendant Crown, too, lacks independence from Dimon because he (i) served on the board of directors at Bank One while Dimon was its CEO, and (ii) later "advocated" for Dimon to assume a leadership role at JPMorgan. *Id.* ¶ 194. Defendant Novakovic, in turn, is allegedly not independent from Crown because she is currently CEO and Chair of General Dynamics, which is "Crown's family business." *Id.* ¶ 195.

## ARGUMENT

Mr. Staley is a Defendant as to Counts II and III of the Complaint. Both claims are fatally deficient for multiple reasons. First, Plaintiffs do not (and cannot) show that making a demand of JPMorgan's board would have been futile given that the company is already suing Mr. Staley in this very Court. Nor do Plaintiffs meet their high burden to show that the board lacks impartiality to weigh litigation against all Defendants generally. Second, the claims against Mr. Staley are substantively deficient because they fail to allege (i) any basis to conclude that Mr. Staley had the supervisory duties that they accuse him of breaching, or (ii) any basis to toll the expired limitations periods on claims that accrued long ago under New York law. Lastly, the doctrine of claim splitting bars the repetitive claims against Mr. Staley by JPMorgan that this suit seeks to advance.

## I.    Plaintiffs Have Failed To Show That Demand on the Board Is Excused.

It is a "'cardinal precept'" of Delaware law[3] that "directors, rather than shareholders, manage the business and affairs of the corporation," including by deciding whether and whom to

---

[3] "In determining whether demand is required or excused, the Court applies the substantive law of Delaware, JPMorgan's state of incorporation." *Cent. Laborers' Pension Fund v. Dimon*, 2014 WL

sue for alleged harm to the business. *United Food & Com. Workers Union v. Zuckerberg*, 262 A.3d 1034, 1047 (Del. 2021) (en banc) (quoting *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984)). Because a derivative suit "encroaches on the managerial freedom of directors," *id.*, Federal Rule of Civil Procedure 23.1 requires that a stockholder bringing such a suit either (1) make a demand on the board, or (2) show why a demand would be futile. *Id.* This demand requirement "is not excused lightly," *id.* at 1049, and a complaint must "state with particularity" the reasons for not obtaining the board's approval "or not making the effort." Fed. R. Civ. P. 23.1(b)(3). As courts have observed, this is an "atypically rigorous" pleading requirement, *In re SAIC Inc. Derivative Litig.*, 948 F. Supp. 2d 366, 384 (S.D.N.Y. 2013), *aff'd*, 553 F. App'x 54 (2d Cir. 2014), so "surviving a motion to dismiss for failure to comply with Rule 23.1 is a difficult feat." *Brewer v. Breen*, 2018 WL 565267, at *5 (S.D.N.Y. Jan. 23, 2018) (internal quotation and citation omitted).

Where, as here, a plaintiff admits that it made no demand of the board but alleges that its failure to do so may be excused as futile, its pleadings must show that the current board of directors was "incapable of making an impartial decision regarding the pursuit of the litigation." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). This showing requires a well-supported rationale as to why the board could not be relied on to press claims aggressively against the would-be defendants, such as that certain members of the board would face a personal risk of liability in the litigation, or would be "beholden" to those who would. As explained below, Plaintiffs cannot make the required showing here.

---

3639185, at *2 (S.D.N.Y. July 23, 2014), *aff'd*, 638 F. App'x 34 (2d Cir. 2016); *see Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991).

**A.    Plaintiffs Cannot Show Demand Futility as to Mr. Staley Because the Bank Has Already Sued Him on the Same Allegations.**

The Court need not undertake a standard demand-futility analysis here because there can be no doubt of the Demand Board's ability—and *willingness*—to sue Mr. Staley for the events at issue.  As this Court is well aware, JPMorgan has already sued Mr. Staley for breach of fiduciary duty based on the identical alleged acts underlying this derivative action.  *See* Third-Party Compls., *Doe v. JPMorgan*, 1:22-cv-10019-JSR, ECF No. 59; *USVI v. JPMorgan*, 1:22-cv-10904-JSR, ECF, No. 130.  Indeed, the bank did so less than four months ago, and no director left or joined the company's board since Plaintiffs initiated this suit.  *See generally* Compl. ¶¶ 33-39, 188.

In short, the very same Demand Board that Plaintiffs declined to petition has *already done* what Plaintiffs claim it would *never* do if asked.  For that reason alone, Plaintiffs' failure to make that demand cannot be excused.  *See, e.g.*, *In re Delta & Pine Land Co. S'holders Litig.*, 2000 WL 875421, at *6 (Del. Ch. June 21, 2000) ("[T]he existence of a board-initiated action conclusively defeats any claim that demand would have been futile."); *Richardson, as Tr. of Richardson Living Tr. v. Clark*, 2020 WL 7861335, at *12 (Del. Ch. Dec. 31, 2020) (dismissing claim where the "Demand Board would . . . have been able to apply its business judgement to a demand").

**B.    Plaintiffs' Allegations That the Board Could Not Impartially Consider a Litigation Demand Fall Short.**

Under a standard demand-futility analysis, a court presumes that directors are independent and faithful to their fiduciary duties, *In re Am. Int'l Grp., Inc. Derivative Litig.*, 415 F. App'x 285, 286 (2d Cir. 2011), and thus to show futility, a plaintiff must establish one of the following three things for at least half the members of the demand board: (1) that the member "received a material personal benefit" from the misconduct alleged in the lawsuit; (2) that he "faces a substantial likelihood of liability" on a particular claim; or (3) that he "lacks independence" from someone who meets one of the first two criteria.  *Zuckerberg*, 262 A.3d at 1058 (adopting three-prong test);

*see also Patel v. Duncan*, 2021 WL 4482157, at *18 (Del. Ch. Sept. 30, 2021) (confirming *Zuckerberg* test), *aff'd*, 227 A.3d 1257 (Del. 2022).  And because futility is assessed "on a claim-by-claim basis," *Lambrecht v. O'Neal*, 504 F. App'x 23, 26 (2d Cir. 2012); *accord Beam v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004), a plaintiff must make this showing independently for each claim at issue.

Here, Plaintiffs make no allegation of a "material personal benefit" to any director,[4] so to establish futility as to both Counts II and III against Mr. Staley, they appear to rely exclusively on prongs two and three of the test from *Zuckerberg* identified above.  They do not succeed.

### 1.  Demand Is Not Excused for Claim II.

Count II is a claim for breach of fiduciary duty against Mr. Staley and Dimon, alleging that, in their capacity as "Officers" of JPMorgan, they ignored red flags related to Epstein's banking activity and permitted the bank to neglect its reporting and compliance requirements. Compl. ¶¶ 208-15.  As to this claim, Plaintiffs make no showing of demand futility on any of the available *Zuckerberg* grounds.

***Zuckerberg* Prong Two:**  The second *Zuckerberg* prong hinges on a director facing a "substantial likelihood" of *personal* liability were his company to bring the claim at issue.  Here, for Count II, the only persons whose conduct are at issue are Dimon and Mr. Staley, the "Officer Defendants."  Compl. ¶¶ 208-15.  Of those two, only Dimon sits on the Demand Board.  None of remaining eleven members of the Board faces *any* liability on Count II, much less "a substantial likelihood of liability" as the law requires to show demand futility.  262 A.3d at 1058.  So a clear

---

[4] Indeed, several of the Demand Board members joined the board only *after* the bank terminated Epstein as a client, and thus they could not have benefited from any alleged actions by Dimon or Mr. Staley to conceal Epstein's dealings over the course of bank's relationship with him. *See, e.g.*, Compl. ¶¶ 37 (Combs joining 2016), 38 (Hobson joining 2018), 190 (Neal joining after 2013), 35 (Novakovic joining 2020).

majority of the board directors could fairly assess a litigation demand against the Officer Defendants, as articulated in Count II of the Complaint.  *See Melbourne Mun. Firefighters' Pension Tr. Fund ex rel. Qualcomm, Inc. v. Jacobs*, 2016 WL 4076369, at \*13 (Del. Ch. Aug. 1, 2016) ("It is unclear . . . how a majority of the Board could face a substantial likelihood of liability as to Count II when only two of the fifteen members of the Board . . . are included as Officer Defendants."), *aff'd*, 158 A.3d 449 (Del. 2017) (unpublished table decision).

Although the Court should not consider the board members' potential liability on Count I when assessing demand futility as to Count II,[5] Plaintiffs' allegations of futility would still fall short even if the Court were to do so.  Because JPMorgan has adopted the exculpatory protections of Section 102(b)(7) of the Delaware General Corporation Law,[6] the company's directors face liability only for *bad faith* or *disloyal* conduct—e.g., knowingly engaging in illegal activity—not mere misjudgment or poor performance.  *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 367 (Del. 2006) (en banc); *Wood*, 953 A.2d at 141.  To establish director liability under this standard, Plaintiffs attempt to plead a *Caremark* theory based on the directors' knowing abdication of oversight duties,[7] which requires particularized *facts* showing that the directors either (1) "*utterly failed* to implement *any* reporting or information system or controls," or (2) after implementing such controls, "*consciously* failed to monitor or oversee [their] operations."  *Stone*,

---

[5] As noted above, futility is a claim-by-claim determination.  *Lambrecht*, 504 F. App'x at 26.

[6] *See* 8 Del. C. § 102(b)(7).  "A serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors."  *Wood*, 953 A.2d at 141; *see* Decl. of Audra J. Soloway, Ex. 2 at 4, ECF No. 26-1 (exculpating directors to "the fullest extent" permitted by Delaware law for breaches of fiduciary duty).

[7] The Director Defendants breached their fiduciary duties "either by ignoring red flags related to Epstein's actions and failing to adhere to their own internal controls or by knowingly disregarding their own internal controls and intentionally allowing the Company to continue facilitating Epstein's criminal conduct."  Compl. ¶ 204.

911 A.2d at 370 (emphases added); *see also In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343, 359-60 (Del. Ch. 2023) (distinguishing an "Information-Systems" *Caremark* claim from a "Red-Flags" claim).  Such a claim has been described as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment," and Plaintiffs' pleadings do not come close to satisfying the requirements.  *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).[8]

*First*, while the Complaint faults the Director Defendants for failing to install "an *adequate* oversight system" to ensure compliance, Compl. ¶ 180, this is not equivalent to alleging that the directors undertook *no efforts at all*, as the law requires.  *Rojas ex rel. J.C. Penney Co., v. Ellison*, 2019 WL 3408812, at *9 (Del. Ch. July 29, 2019) (noting that "utterly" is a "linguistically extreme formulation").  Indeed, the Complaint admits that JPMorgan had a "compliance team" that "repeatedly flagged" Epstein's suspicious activity, bringing them to the attention of "[e]xecutives at the highest reaches" of the bank.  Compl. ¶ 181.  Thus, Plaintiffs' grievances boil down to chides about the *sufficiency* of JPMorgan's internal controls, *e.g.*, ¶¶ 149, 154, 158, 169, not their *existence*.  This is a fatal failing, as courts routinely reject failure-of-oversight claims where, as here, a plaintiff acknowledges that the company had a regular compliance structure.  *See, e.g.*, *In re Gen. Motors Co. Derivative Litig.*, 2015 WL 3958724, at *14 (Del. Ch. June 26, 2015) (rejecting *Caremark* claim because company "had a system for reporting risk to the Board, but in [plaintiff's] view it should have been a better system"), *aff'd*, 133 A.3d 971 (Del. 2016); *In re LendingClub*

---

[8] Such a showing is all the more difficult for director Michael Neal: Plaintiffs suggest that he could face substantial liability in this action or the *Doe* and *USVI* actions, Compl. ¶ 189, but he has not been sued in any case, and he did not even join the JPMorgan board until *after* the bank terminated Epstein as a client, *id.* ¶ 190.

*Corp. Derivative Litig.*, 2019 WL 5678578, at *9 n.59 & *18 (Del. Ch. Oct. 31, 2019) (dismissing *Caremark* claim because company had, *inter alia*, risk and audit committees).

Plaintiffs fare no better on *Caremark*'s alternative theory of knowingly disregarding clear red flags.  Under this "Red-Flags" theory, liability exists only when "the directors were conscious of the fact that they were not doing their jobs."  *Horman v. Abney*, 2017 WL 242571, at *10 (Del. Ch. Jan. 19, 2017).  Here, although the Complaint pleads a litany of alleged red flags (and ensuing management failures) in JPMorgan's compliance and anti-money laundering systems, *e.g.*, Compl. ¶¶ 170-73, it is devoid of allegations of *particularized* knowledge or bad faith—i.e., "actual scienter"—by the *individual* directors who oversaw the bank.  *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2017 WL 6452240, at *1 (Del. Ch. Dec. 18, 2017).[9]  Such conclusory allegations are insufficient, as Delaware courts reject the idea that "because illegal behavior occurred, internal controls must have been deficient, *and the board must have known so*."  *Horman*, 2017 WL 242571, at *7 (emphasis added) (citation omitted).  As these cases recognize, even well-intentioned oversight cannot guarantee a company's law-abiding behavior—especially when the company is the largest bank in the United States—and thus showing merely "that corporate wrongdoing has occurred" does not equate to showing that "directors failed to act in good faith."  *Id.*  But that is precisely the logic of Plaintiffs' allegations here.  Compl. ¶ 189.[10]

---

[9] Perhaps that silence is strategic.  After all, if Plaintiffs added factual allegations pertaining to each director—as it should to maintain a viable *Caremark* claim—then Plaintiff would find itself with a numbers problem.  Of the twelve members of the Demand Board, at most *five* served on the Board while Epstein was a client of the bank.  Compl. ¶ 190.  They are thus the only Demand Board members who could conceivably face liability under a *Caremark* theory for "consciously disregarding" red flags about Epstein banking activities at JPMorgan.

[10] Plaintiffs' slapdash pleading is most evident in their decision to include Phebe Novakovic as a Director Defendant.  Ms. Novakovic plainly could not have "ignor[ed] red flags related to Epstein's actions" or "knowingly . . . allow[ed] the Company to continue facilitating Epstein's criminal conduct,"  Compl. ¶ 204, given that she did not join JPMorgan's board until 2020, *after*

*Zuckerberg* **Prong Three:** The Complaint devotes a few lines to the idea that three Demand Board members—Bammann, Crown, Novakovic—lack independence because they are or were beholden to Jamie Dimon.  The arguments cannot withstand scrutiny.  Although it is true that Bammann worked under Dimon for five years, she did so *nearly 20 years ago*.  Compl. ¶ 193. And while Crown worked with Dimon at Bank One—and helped select him for a leadership role at JPMorgan—he did so as a director serving *over* Dimon, not in a manner that would make Crown beholden.  *Id.* ¶ 194.  Such prior business relationships "fall well short of what is required under Delaware law to establish that a director lacks independence."  *DiRienzo v. Lichtenstein*, 2013 WL 5503034, at *23 (Del. Ch. Sept. 30, 2013) (rejecting allegations that director served on board of defendant's outside portfolio companies); *Franchi v. Firestone*, 2021 WL 5991886, at *5 (Del. Ch. May 10, 2021) (director's nomination to other boards by defendant did not destroy independence).  As one court has observed, the fact that directors of one company are also "colleagues at another institution does not mean that they will not or cannot exercise their own business judgment" when one or the other of them stands to lose or gain.  *In re Dow Chem. Co. Derivative Litig.*, 2010 WL 66769, at *9 (Del. Ch. Jan. 11, 2010).  *A fortiori*, when two colleagues' working relationship occurred a decade or more ago—as with Bammann and Dimon—inferring partiality is even less appropriate.  *See Yucaipa Am. All. Fund II, L.P. v. Riggio*, 1 A.3d 310, 315 (Del. Ch. 2010) (rejecting lack-of-independence allegation based on director's work as defendant's subordinate ten years prior), *aff'd*, 15 A.3d 218 (Del. 2011) (unpublished table decision).

The Complaint fares no better impugning the independence of Novakovic. Plaintiffs' allegations of her partiality are entirely derivative of their arguments as to Crown.  Compl. ¶ 195.

---

*Epstein was already dead*.  *Id.* ¶ 36.  While Plaintiffs have leveled serious allegations, they have not filed a serious complaint.

That is, there is no allegation that Novakovic was *herself* beholden to Dimon—much less to Mr. Staley—but rather that she presently serves as CEO and Chair of "Crown's family business," and thus Crown's purported beholdenness should be attributed to her as well.  *Id.* at 195 ("Crown likely has the influence to fire Novakovic.").[11]  But even if Crown faced liability or his independence were somehow compromised—and, as noted above, neither is true—Plaintiffs' claims as to Novakovic would still amount to nothing more than speculation, falling well short of overcoming the strong presumption that directors operate independently and faithfully in their fiduciary duties. *See In re Am. Int'l Grp., Inc. Derivative Litig.*, 415 F. App'x at 286.  Indeed, the Complaint fails to plead whether Crown's role at General Dynamics gave him "'unilateral power,' much less substantial sway, over [Novakovic's] compensation or future job prospects," which is what the law requires to establish a lack of independence.  *Flannery v. Genomic Health, Inc.*, 2021 WL 3615540, at *15 (Del. Ch. Aug. 16, 2021).

### 2.   Demand Is Not Excused for Count III.

Aside from their claim in Count II for breach of fiduciary duty, Plaintiffs have also pleaded a claim against Mr. Staley in Count III for unjust enrichment.  Compl. ¶¶ 216-20.  Like all derivative claims, Count III must meet the same demand requirements as Count II.  So, for demand to be excused as futile, Plaintiffs must show, as to Count III specifically, that the board could not consider the claim impartially.  *See MCG Cap. Corp. v. Maginn*, 2010 WL 1782271, at *23-24 (Del. Ch. May 5, 2010) (dismissing derivative claim for unjust enrichment because demand was not excused as futile).

---

[11] What Plaintiffs casually call "Crown's family business" is in fact General Dynamics—a publicly traded *Fortune 100* company with no controlling shareholder.

For the same reasons discussed above, Plaintiffs cannot make this showing. Count III differs from Count II only in that it is *nominally* a claim for unjust enrichment. Compl. ¶ 218. But Plaintiffs' actual underlying theory of unjust enrichment—i.e., their basis to claim that Mr. Staley now possesses wealth that he should not have—depends entirely, and expressly, on their allegation that he breached his fiduciary duties to JPMorgan. In Plaintiffs' own words:

> It would be unconscionable and against fundamental principles of justice, equity, and good conscience for the Individual Defendants to retain the benefits that they received only by virtue of breaching their fiduciary duties.

*Id.* ¶ 219. Thus, the demand-futility showing fails for the same reasons. *See Reiter v. Fairbank*, 2016 WL 6081823, at *14 (Del. Ch. Oct. 18, 2016) (dismissing derivative breach of fiduciary duty and unjust enrichment claims under Rule 23.1); *see also In re MetLife Inc. Derivative Litig.*, 2020 WL 4746635, at *18 (Del. Ch. Aug. 17, 2020) ("A Rule 23.1 analysis for the unjust enrichment claim thus necessarily treads the same path as the demand futility analysis, implicates the same conduct, and, therefore, obtains the same result." (cleaned up)).

## II.     The Claims Against Mr. Staley Specifically Are Defective.

Besides their failure to establish demand futility, Plaintiffs' claims against Mr. Staley in Counts II and III are also fatally deficient for (i) failure to state a claim, and (ii) untimeliness under New York's statute of limitations.

### A.     Plaintiffs Fail To State a Claim Against Mr. Staley.

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must draw all reasonable inferences in the complaint's favor, it need not accept as true "mere conclusions of

law or unwarranted deductions of fact." *Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888 F.

Supp. 2d 491, 502 (S.D.N.Y. 2012) (internal quotation marks omitted).

As noted above, Count II alleges that Officer Defendants Dimon and Staley breached their

fiduciary duties to JPMorgan by "ignoring red flags related to Epstein's actions and failing to

adhere to their own internal controls or by knowingly disregarding their own internal

controls." Compl. ¶¶ 211-12. As applied to Mr. Staley specifically—who was never a director,

but only an officer—this claim falters on the well-settled principle that, unlike directors, who bear

"ultimate responsibility" for the entire business,[12] a corporate officer is merely an agent possessing

only those powers and responsibilities delegated by the board. *In re McDonald's*, 289 A.3d at

369. While a company's CEO and Chief Compliance Officer may have "company-wide oversight

portfolios," other officers "generally have a more constrained area of authority," which necessarily

entails limitations on the duties that they owe. *Id.* Accordingly, where, as here, a plaintiff brings

a *Caremark* breach-of-fiduciary duty claim against an officer, he must allege specific facts

establishing that the officer-defendant owed oversight duties as to *the particular corporate

function* where supervision allegedly broke down. *See id.* at 369-70 (ruling duty limited to

"addressing or reporting red flags within [the officer's] areas of responsibility"); *cf. Ontario

Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 2023 WL 3093500, at *51 (Del.

Ch. Apr. 26, 2023) (permitting *Caremark* claim because defendants "were Walmart's *principal

compliance officers* . . . during the actionable period") (emphasis added)).

This principle defeats Plaintiffs' attempt to plead claims against Mr. Staley. Although

Plaintiffs indiscriminately allege that the "Officer Defendants" were required to implement and

---

[12] *Chapin v. Benwood Found., Inc.*, 402 A.2d 1205, 1211 (Del. Ch. 1979), *aff'd sub nom. Harrison v. Chapin*, 415 A.2d 1068 (Del. 1980); *see* 8 Del. C. § 141.

maintain controls with respect to suspicious financial transactions and Know-Your-Customer regulations, *e.g.*, Compl. ¶ 211, they fail to allege *any* area-specific oversight obligations of Mr. Staley, and make no showing whatsoever that the compliance function was ever within Mr. Staley's purview.  In this regard, the Amended Complaint is replete with references to the bank's "risk management division," "compliance department," "compliance team," and even its "Global Corporate Security Division," *id.* ¶¶ 5, 147, 151, 181, all without a single allegation that Mr. Staley either worked in or oversaw any of them.  Unlike his co-Defendant Jamie Dimon—whose writ, as CEO, presumably ran the gamut—Mr. Staley served in discrete roles lower in the corporate hierarchy.  And starting in 2009, Mr. Staley moved to JPMorgan's investment banking division, with no job duties connected to the bank's private wealth arm that handled Epstein's finances. Moreover, while Plaintiffs allege that Mr. Staley was tasked early on with securing Epstein as a client, they concede that the "top-level due diligence review" for onboarding him—i.e., the part of the process where, according to Plaintiffs, the breakdown in controls occurred—was undertaken by other employees.  *Id.* ¶¶ 119, 122.

Plaintiffs' unjust enrichment claim against Mr. Staley in Count III fares no better.  As noted above, that claim expressly depends on the allegation that Defendants "breached their fiduciary duties," *id.* ¶ 217, and thus it necessarily fails for the same reasons.  *See, e.g.*, *Monroe Cnty. Emps.' Ret. Sys. v. Carlson*, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010) (dismissing unjust enrichment claim based on deficient fiduciary duty claim); *Hughes v. Xiaoming Hu*, 2020 WL 1987029, at *17 (Del. Ch. Apr. 27, 2020) (explaining that "unjust enrichment" is "properly conceived as a form of additional damages dependent on the plaintiff proving the oversight claim").  Even on its terms, moreover, the claim is fatally deficient.  Under Delaware law, unjust enrichment requires a plaintiff to plead, among other things, "the absence of a remedy provided

by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (en banc).  Even with the most

generous reading, Plaintiffs nowhere pled that prerequisite.  *See id.* at 1130-31 (affirming dismissal

on that basis).  In addition, the only damages that Plaintiffs claim are the Defendants' "profits,

benefits, and other compensation," e.g., their salaries and bonuses.  Compl. ¶ 217.  As a matter of

law, this is insufficient for an unjust enrichment claim:

> [A] claim for unjust enrichment cannot be maintained where, as here, the "only enrichment alleged by plaintiffs consists of defendants' salaries, benefits, and unspecified bonuses."

*Steinberg v. Dimon*, 2014 WL 3512848, at *4 (S.D.N.Y. July 16, 2014) (quoting *In re Pfizer Inc.*

*S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 465 (S.D.N.Y. 2010)).

### B.  The Claims Against Mr. Staley Are Time-Barred.

Even if Plaintiffs' claims against Mr. Staley were not substantively deficient, they would

still fail as untimely.[13]  In New York, a six-year limitations period governs suits by corporations

against their officers for mismanagement, which includes derivative suits for breaches of fiduciary

duty.  *Hilton Head Holdings b.v. v. Peck*, 2012 WL 613729, at *3 (S.D.N.Y. Feb. 23, 2012); *see*

N.Y. CPLR § 213(7).  And a three-year limitations period covers unjust enrichment claims where,

as here, the plaintiff seeks monetary damages.  *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247,

263 (S.D.N.Y. 2008); N.Y. CPLR § 214(3).  Under either limit, Plaintiffs' claims against Mr.

Staley are time-barred.  Mr. Staley left his employment at the bank in January 2013, and Epstein

was terminated as a client later the same year.  Compl. ¶¶ 42, 158.  By that point—i.e., a full

*decade* ago—any oversight duties that Mr. Staley owed came to an end, and any alleged breaches

of those duties had already occurred.  No related failures could conceivably have occurred

---

[13]  A "statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).

thereafter.  Because a claim "accrues upon the occurrence of the alleged wrongful act giving rise

to restitution," *Busher v. Barry*, 2021 WL 5071871, at *3 (2d Cir. Nov. 2, 2021) (citation omitted),

both the three- and six-year limitations periods had long since expired when Plaintiffs filed this

suit in May 2023.[14]

Apparently anticipating this problem, Plaintiffs attempt to plead a tolling theory premised

on fraudulent concealment, specifically that JPMorgan employees failed to disclose the "critical

facts necessary to put Plaintiffs on notice."  Compl. ¶ 197.  But under New York law, this theory

applies only where a plaintiff shows that he (i) "was induced by fraud, misrepresentations or

deception to refrain from filing a timely action," and (ii) that he undertook "reasonable reliance on

the defendant's misrepresentations."  *Busher*, 2021 WL 5071871, at *4.[15]  In this regard, the best

that Plaintiffs can do is to point to the failure of "the Company"—not Mr. Staley or any other

Defendant—to file Suspicious Activity Reports "concerning Epstein and his accounts."[16]  Compl.

¶ 197.  Even if this were true—and it is not[17]—it is emphatically *not* a failing that may be attributed

---

[14] To be sure, for causes of action "based upon fraud," the limitations in Section 213(8) apply, including the extension until two years after "the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. CPLR. § 213(8).  But Plaintiffs' claims here—alleging oversight and compliance failures—are not grounded in fraud.  *See Hilton Head Holdings*, 2012 WL 613729, at *3.

[15] The federal doctrine of equitable tolling is unavailable for state causes of action in New York, so New York's tolling laws apply.  *Busher*, 2021 WL 5071871, at *4.

[16] Although Plaintiffs make the entirely conclusory claim that Mr. Staley and others "actively concealed concerns," Compl. ¶ 198, this Court need not credit wholly unsupported allegations that merely mimic the legal standard but provide none of the detail required to satisfy Rule 9(b).

[17] As mentioned, on a motion to dismiss pursuant to Rule 12(b)(6), the court can judicially notice information outside the pleadings, including in related court filings, when such information bears on notice for purposes of a tolling argument countering a statute of limitations defense.  So the Court can note that the bank in fact filed numerous SARs related to Epstein, including "multiple suspicious activity reports related to Epstein's accounts in 2002."  Op. and Order Granting Mot. for Class Certification at 5, *Doe v. JPMorgan*, 22-cv-10019-JSR, ECF No. 171.  That fact destroys Plaintiffs' main theory here.

to Mr. Staley, who had no responsibility for such filings nor any corporate authority to influence whether or not they were filed.  Even more fundamentally, *inaction*—which is all that a failure-to-file amounts to—is not an affirmative act of concealment for purposes of a tolling argument, and New York law requires "an act of deception, separate from the ones for which" a plaintiff sues, as a basis for tolling.  *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 789 (2012).  The Complaint, moreover, contains no explanation as to why or how any actions affected *Plaintiffs'* ability or decision to sue, such as how they relied on particular filings (or the absence thereof) or how they were prevented from learning or doing anything.  There is thus no basis for tolling the statute of limitations here.

## III.    Under the Doctrine of Claim Splitting, This Suit Cannot Proceed Against Mr. Staley.

The Court should also dismiss the claims against Mr. Staley under the doctrine of claim splitting.  This doctrine enforces the common-law rule that "a party must bring *in one action* all legal theories arising out of the same transaction or series of transactions."  *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) (emphasis added); *see also* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4406 (3d ed.) ("In dealing with simultaneous actions on related theories, courts at times express principles of 'claim splitting' that are similar to claim preclusion, but that do not require a prior judgment.").  Like the doctrine of claim preclusion, the rule against claim splitting fosters judicial economy, safeguards finality, and protects parties from vexatious or repetitive litigation.  *Id.*  When faced with claims split across duplicative lawsuits, a court can stay the later-filed action, dismiss it, or consolidate it with the earlier one.  But whatever the remedy, the rationale remains the same: Plaintiffs "have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000).

Here, Plaintiffs seek to advance claims on behalf of JPMorgan as an *entity*, based on alleged wrongs done to the *entity* and ensuing harm accruing to the *entity*. Any recovery in this action will be in the name of the entity, not individual shareholders like Plaintiffs. Such is the nature of a derivative claim. But as this Court is well aware, the very entity whose claims and damages are at stake in this case—JPMorgan—has already sued Mr. Staley for claims premised on the *same* legal theories and arising out of the *same* events. *See Doe v. JPMorgan*, 1:22-cv-10019-JSR; *USVI v. JPMorgan*, 1:22-cv-10904-JSR.[18] By any definition, therefore, the present derivative case is entirely duplicative of the already-existing lawsuit that JPMorgan has brought in its own name and right. That the derivative case is being *directed* by someone other than the bank itself does not change this analysis or the applicability of legal doctrines governing duplicative litigation. *See Huck ex rel. Sea Air Shuttle Corp. v. Dawson*, 106 F.3d 45, 47 (3d Cir. 1997) (explaining that claim preclusion applies to dismiss subsequent derivative action based on similar claims); *see also Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005) (unpublished) (affirming dismissal, on claim-splitting grounds, a second lawsuit with different defendants because such defendants were "in privity" with those in first suit). JPMorgan has already decided when and how it wants to sue Mr. Staley, and any additional claims it possesses could have been brought in that action. Those already-existing claims will be resolved in this Court in due course, and in the meantime, this Court should dismiss the duplicative claims against Mr. Staley in this action.

---

[18] Although courts are typically limited to the four corners of a complaint when assessing a motion to dismiss, when analyzing claim preclusion or claims splitting, courts can consider documents incorporated by reference in the complaint or "not incorporated by reference" but "relie[d] heavily upon" in their "terms and effect." *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 417 (N.D.N.Y. 2005) (citation omitted) (citing judicial actions not expressly incorporated in complaint when dismissing claims under claims splitting doctrine). And courts can judicially notice items appearing in the court records of prior litigation that are related to the case before it. *Id.*

**CONCLUSION**

For the forgoing reasons, the Court should dismiss the claims against Mr. Staley.

Date: July 6, 2023                            Respectfully submitted,


                                             */s/ John McNichols*
                                             John McNichols
                                             WILLIAMS & CONNOLLY LLP
                                             680 Maine Avenue, S.W.
                                             Washington, DC 20024
                                             Tel: (202) 434-5252
                                             Fax: (202) 434-5029
                                             jmcnichols@wc.com

                                             *Counsel for Defendant James Edward Staley*